RECEIVED

JUL 1 6 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| SHARA LYN SONNIER | CIVIL ACTION NO. 09-0605 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the Commissioner's decision in this social security matter, denying benefits, be affirmed and the case dismissed. [Doc. 14] Claimant Shara Lyn Sonnier filed an Objection to the magistrate judge's Report [Doc. 15], wherein Ms. Sonnier argues the Report contains errors of law and fact. Finding Ms. Sonnier's objections to have merit and for the following reasons, this Court **SUSTAINS** Ms. Sonnier's objections. Concluding the ALJ failed to clarify – as is required under the jurisprudence – why she gave more weight to the medical opinion of a non-treating physician over a treating physician, this Court **REMANDS** this case for further proceedings in accordance with the findings contained herein.

I.  **Factual and Procedural History**

The claimant's alleged onset date is February 18, 2008, and she is insured for disability insurance benefits through December 31, 2008. Thus, the claimant must establish disability on or before December 31, 2008 in order to be entitled to a period of disability and disability insurance benefits.

The claimant alleges disability due to cervical problems, TMJ, Grave's disease, and mental

problems. The cervical problems and TMJ appear to be the residual effects of a car accident in which the plaintiff was involved in 2006. The ALJ concluded the foregoing impairments, as well as claimant's Grave's disease, are severe impairments [Tr. 9-10]. However, the ALJ concluded the claimant's mental problems, including post-traumatic stress disorder ("PTSD") with anxiety – also apparently related to her 2006 car accident – are not severe impairments [Tr. 10]. The ALJ noted testing of the claimant revealed she was exaggerating her symptoms on numerous occasions, and that claimant had missed numerous appointments with her treating psychologist. Relying heavily on the foregoing, the ALJ concluded the information provided by the claimant regarding her mental impairments was unreliable. The ALJ went on to note "[claimant's] treating physicians have placed no limitations on her abilities to perform work-related activities." [Tr. 10]. In making this conclusion, the ALJ appears to have given significant weight to the testimony of a one-time DDS examiner, Dr. David Greenway, a clinical psychologist, and less weight to the opinions of the claimant's treating physicians, Dr. Shelly Savant, a psychiatrist, and Dr. Henry J. Lagarde, a clinical psychologist. Further finding there was evidence the claimant's PTSD and anxiety responded somewhat to medication, the ALJ concluded at Step 2 the claimant's mental problems are not severe. With respect to claimant's severe impairments, the ALJ concluded the claimant has the residual functional capacity to perform a full range of sedentary work, and that she is, therefore, not disabled [Tr. 11-13].

On appeal to this Court, the magistrate judge affirmed the decision of the ALJ, noting although claimant has been diagnosed with PTSD with anxiety, for which she was being treated regularly by Drs. Lagarde and Savant, the reports of Dr. Greenway, and some of those of Dr. Lagarde, indicate the plaintiff is not credible regarding her symptoms. The magistrate judge stated:

Dr. Greenway found that the information provided by claimant was of "poor to moderate reliability." [Tr. 236]. Test results to defect feigning were positive, and she exerted very poor effort on testing. His diagnosis was "fake bad response set." [Tr. 238]. Dr. Lagarde also indicated that claimant's MMPI profile was not valid and suggested that she was exaggerating on the test. [Tr. 316-17].

In her Objections, the claimant argues the magistrate judge erred in finding the claimant's mental impairments are not severe. Claimant argues in so concluding, the ALJ and the magistrate judge erred in giving greater weight to the opinion of one-time consultative examiner Dr. Greenway and a single statement by Dr. Lagarde in November 2007 concerning the results from claimant's MMPI-II[1] test to support the ALJ's determination the claimant is not credible regarding her symptoms. The claimant contends the ALJ's and magistrate judge's reliance on only two reports out of the "plethora of evidence" from Dr. Lagarde and Dr. Savant concerning claimant's mental impairments was error. The claimant also contends because of the ALJ's erroneous finding that claimant's mental impairments are not severe, the ALJ's residual functional capacity assessment ("RFC") is also flawed, inasmuch as the ALJ determined the claimant can perform the full range of sedentary work.

## II. Law and Analysis

### A. Legal Standards

28 U.S.C. §636(b)(1)(B)[2] allows a magistrate to hold hearings, propose findings of fact, and

---

[1] The MMPI-II test is the "Minnesota Multiphasic Personality Inventory," which is designed to aid in the assessment of a wide range of clinical conditions.

[2] 28 U.S.C. §636 states in relevant part:

> **(B)** a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial [FN1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

3

recommend disposition of certain dispositive pretrial and posttrial motions. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 855 (5th Cir. 1991), citing *Ford v. Estelle,* 740 F.2d 374, 377 (5th Cir. 1984). The magistrate judge's proposed findings of fact and recommendations are subject to *de novo* review by the district court, a review which includes an opportunity for the parties to object to the findings and recommendations of the magistrate. *Id.*

In this social security matter, the court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. *Carey v. Apfel*, 230 F.3d 131, 136 (5th Cir. 2000); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir.1992); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carey*, 230 F.3d at 136; *Anthony*, 954 F.2d at 292; *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). The court may not re-weigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. *Carey*, 230 F.3d at 136; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the

---

> (C) the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
>
> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. §636(b)(1)(B) & (C).

decision. *Johnson*, 864 F.2d at 343.

This court has conducted a de novo review of the record in this matter, including the Report and recommendation of the magistrate judge and the Objections of the claimant. The following Ruling now issues.

### III. Analysis of Objections

Claimant contends the magistrate judge erroneously affirmed the conclusion of the ALJ that claimant's mental impairments are not severe and, in doing so, gave greater weight to the opinion of a non-treating physician than to those of a treating physician.

In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit instructed the standard to be applied in determining whether a claimant's impairment is severe is as follows: "[A]n impairment can be considered as not severe only *if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.*" 752 F.2d at 1101 (emphasis added), *citing Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984) and *quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). The *Stone* court held further held that, unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration. 752 F.2d at 1106.

Additionally, it is well-settled the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), *citing Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984); *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981); *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir.1981); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980). There are exceptions to this principle. The ALJ may give less weight to

a treating physician's opinion when (1) "there is good cause shown to the contrary," *Perez,* 653 F.2d at 1001; *Smith,* 646 F.2d at 1081; *Fruge,* 631 F.2d at 1246, as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight," *Warncke v. Harris,* 619 F.2d 412, 417 (5th Cir.1980); *see also Oldham v. Schweiker,* 660 F.2d 1078, 1084-85 (5th Cir.1981), is not supported by medically acceptable clinical laboratory diagnostic techniques, 20 C.F.R. §404.1526 (1985), or is otherwise unsupported by the evidence. *E.g., Warncke,* 619 F.2d at 417; *Oldham,* 660 F.2d at 1084. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler,* 770 F.2d at 485, *citing Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982). However, an ALJ cannot reject a medical opinion without an explanation. *Loza v. Apfel,* 219 F.3d 378, 395 (5th Cir. 2000), *citing Strickland v. Harris,* 615 F.2d 1103, 1110 (5th Cir.1980); *Goodley v. Harris,* 608 F.2d 234, 236 (5th Cir.1979).

In the instant case, the ALJ appears to have used the correct standard in concluding the claimant's mental impairments are not severe, noting as he does that the claimant's mental impairment "only minimally impacts her ability to perform work-related activities." [Tr. 10]. However, after review of the entire record, this Court concludes that in reaching her finding of non-severity, the ALJ gave greater weight to the opinion of a one-time DDS examiner – Dr. Greenway – than she did to the opinions of the claimant's treating physicians – Drs. Savant and Lagarde – *without stating why she was doing so.* The jurisprudence does not allow this. It is well-settled in the Fifth Circuit that

> absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. §404.1527(d)(2).

6

Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)

20 C.F.R. 404.1527(d)(2) states:

d) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

[ . . . ]

> **(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.** If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. **When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. <u>We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.</u>**

20 C.F.R. § 404.1527 (emphasis added).[3]

---

[3] The Commissioner looks at the following factors in determining whether to give controlling weight to the opinion of a treating physician:

(1) Length of the treatment relationship and the frequency of examination.
(2) Nature and extent of the treatment relationship.
(3) Supportability.
(4) Consistency.
(5) Specialization.

7

Additionally, the Fifth Circuit has held an ALJ cannot reject a medical opinion without an explanation. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000), *citing Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir.1980); *Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir.1979). An ALJ may give less weight to a treating physician's opinion when (1) "there is good cause shown to the contrary," *Perez*, 653 F.2d at 1001; *Smith*, 646 F.2d at 1081; *Fruge*, 631 F.2d at 1246, as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight," *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir.1980); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084-85 (5th Cir.1981), is not supported by medically acceptable clinical laboratory diagnostic techniques, 20 C.F.R. §404.1526 (1985), or is otherwise unsupported by the evidence. *E.g., Warncke*, 619 F.2d at 417; *Oldham*, 660 F.2d at 1084. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d at 485, *citing Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982).

In the instant case, this Court concludes the ALJ has not provided a sufficiently detailed explanation for her failure to give controlling weight to Dr. Lagarde's opinion. This Court is also unclear as to whether the ALJ has accurately set forth Dr. Lagarde's medical opinions. On his second meeting with the claimant on September 5, 2007, Dr. Lagarde noted "[i]mpression is at this

---

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. §404.1527(d)(2)(i)-(ii) & (d)(3)-(6).

point that she manifests depression and anxiety along with clear signs of post traumatic stress associated with a serious automobile accident which occurred in December 2006." [Tr. 285]. Although Dr. Lagarde noted on November 30, 2007 that the results of claimant's MMPI-II "indicates she may have been exaggerating extent of problems," the same treatment notes go on to state *"[c]linical impression is that she is in fact being genuine about her response to the accident."* [Tr. 317] (emphasis added).

> Most significantly, in her decision, the ALJ states
>
> Her treating physician has given no indication that this condition is a severe condition; as he indicated with the claimant's other impairments. Even if it was so indicted, this is a correctable condition controlled with compliance to a proper medication regime. If an impairment can be alleviated by treatment, then the impairment is not considered severe. The claimant has not been hospitalized for her condition. ***Her treating physicians have placed no limitations on her abilities to perform work-related activities.***

[Tr. 10].

> However, on November 20, 2007, Dr. Lagarde opined:
>
> The Diagnosis is Post Traumatic Stress Disorder, Delayed, and Major Depressive Disorder, Single Episode. ***Overall impression is that Mrs. Sonnier is not currently able to function adequately at a full-time job. Primary reason is that her level of emotional agitation mitigates against being able to cope adequately with routine work stressors and to maintain effective persistence and consistency at a full-time job.*** Intention at this point is to continue individual psychotherapy with Mrs. Sonnier and to continue to consult with Dr. Savant about her care.

[Tr. 320-21] (emphasis added). There are no subsequent treatment notes from Dr. Lagarde indicating the claimant can maintain full-time employment.

Thus, although Dr. Lagarde appears to have noted the potential for exaggeration in the claimant, based on his treatment of the claimant over a period of 10 months – and, indeed, is consistent with Dr. Greenway in that regard – Dr. Lagarde nevertheless has opined the claimant

suffers from PTSD and cannot maintain full-time employment. Additionally, none of the scenarios that would cause the Commissioner to give less weight to the opinions of Dr. Lagarde appear to exist in this case. Dr. Lagarde has adequately supported his diagnosis of the claimant's mental condition, after ten months of treatment. Additionally, although Dr. Lagarde has acknowledged the potential for exaggeration by claimant of her symptoms and the possibility of faked responses on her MMPI-II testing, Dr. Lagarde went on to note he believes the claimant is genuinely suffering from a mental impairment that makes it impossible for her to maintain full-time employment. This Court is familiar enough with the work of Dr. Lagarde to conclude that had Dr. Lagarde believed the claimant was wholesale malingering or manufacturing her symptoms, Dr. Lagarde no doubt would not have indicated claimant cannot work. Under these circumstances, the ALJ was required to state why he gave more weight to the opinions of Dr. Greenway rather than Dr. Lagarde and was required to do an analysis of the weight given to each opinion under 20 C.F.R. §202.1527(d)(2). The ALJ's failure to do so in this case is particularly troubling in light of the ALJ's reliance on the opinion of a one-time examiner (Dr. Greenway) over that of Dr. Lagarde.

With respect to the issue of missed appointments – on which the magistrate judge appears to have relied heavily in his determination – this Court notes there is ambiguity in the record regarding the reason for these missed appointments. Although it is clear from Dr. Lagardes's records that the claimant missed numerous appointments, often without calling to cancel them, Dr. Lagarde noted on February 22, 2008 the claimant told him she missed so many appointments because she could not afford her $25 co-payment [Tr. 315]. At that time, Dr. Lagarde told the claimant be thought he remembered the claimant had previously indicated she missed appointments when she was depressed. There is evidence in the record to support both scenarios, that is, the claimant was

diagnosed by Dr. Savant with depression and a possible personality disorder [Tr. 316], and there is evidence in the record indicating the claimant was financially strained at the time of her treatment with Dr. Lagarde. Although Dr. Lagarde arranged to bill claimant's attorney for her sessions rather than the claimant herself, the record shows the claimant missed three additional appointments after this arrangement was implemented. Nevertheless, it is unclear to this Court whether financial strain or depression remained a reason for claimant's missed appointments. This Court notes it is also possible the payment arrangement set up by Dr. Lagarde was suspended, because there is evidence the claimant changed attorneys during her treatment with Dr. Lagarde. Given the ambiguity in the record concerning the precise reason for the claimant's missed appointment with Dr. Lagarde, this Court is hesitant to rely so heavily on the evidence of missed appointments as supporting the ALJ's conclusion, especially in light of Dr. Lagarde's diagnosis and opinion concerning claimant's ability to work.

Because the ALJ failed to explain why he gave more weight to the opinion of Dr. Greenway – and, indeed, failed to acknowledge Dr. Lagarde's opinion that the claimant cannot maintain full-time employment – this Court concludes the ALJ erred in concluding the claimant's mental impairments are not severe.

Because this Court concludes the ALJ erred in finding non-severity with respect to claimant's mental impairments, this Court concludes the residual functional capacity assessment of the ALJ -- finding the claimant can perform the physical *and mental* demands of her past work as a dispatcher – at Step 4 is also flawed.

Remand is appropriate upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's disability based on the record before the court." Ferguson

v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981).

Considering the foregoing, the instant matter is REVERSED AND REMANDED to the ALJ further proceedings to determine whether Shara Lyn Sonnier's mental impairments are disabling in light of the medical opinion of Dr. Henry J. Lagarde. On remand, the ALJ shall consult a qualified psychologist who can assess whether Ms. Sonnier suffers from any psychological impairment(s) that could affect her ability to perform work in the national and/or regional economies.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ___14___ day of July, 2010

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE